UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____
                                                      :
JAMES P. DOHERTY                          :
                                                      :
                    Plaintiff              :          Civil No. 11-03701 (JAP)
                                                      :
          v.                               :          **OPINION**
                                                      :
                                                      :
COMMISSIONER OF SOCIAL          :
SECURITY                                   :
                    Defendant               :
                                                      :
_____:


PISANO, District Judge:

 Before the Court an appeal by James P. Doherty ("Plaintiff") from the final decision of

the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's

request for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").

The Court has jurisdiction to review this matter under 42 U.S.C. § 405(g) and 1383(c)(3) and

reaches its decision without oral argument. *See* Fed. R. Civ. P. 78. For the reasons expressed

below, the Court affirms the final decision of the Commissioner.

## I.  PROCEDURAL HISTORY

 Plaintiff filed an application for DIB and SSI on November 30, 2006, alleging that he was

unable to work as of October 15, 2006 due to depression and lumbar disc disease.

Administrative Record ("R") 141. The Social Security Administration ("SSA") denied his

claims both initially and on reconsideration. Upon Plaintiff's request, a hearing was held on

June 5, 2009 before Administrative Law Judge ("ALJ") Daniel N. Shellhamer at which the

alleged disability onset date was amended to October 26, 2006. R. 17, 21.   The ALJ denied

Plaintiff's claim on September 28, 2009. R. 6-16.   The Appeals Council subsequently denied

Plaintiff's request for review. R.1.   On November 1, 2011, Plaintiff filed a Complaint in this

Court alleging that the Commissioner's decision was not supported by substantial evidence.

## II.  BACKGROUND

Plaintiff was born on December 12, 1955. R. 141.   He has a tenth grade education, and

has not attended any special education classes. R. 172.   In the years prior to October 2006,

Doherty performed several occupations, including ambulance driver, a street sweeper, adult day

care maintenance worker, and an overnight stocker. R. 168.   He was served time in prison from

December 1998 through September 2002 after being convicted for exposing himself to minors.

R.402.[1]

Plaintiff's relevant medical history[2] dates back to April 9, 1998, when he injured his back

while lifting a wheelchair into an ambulance. R. 348.   He underwent an MRI on April 23, 1998

revealing a disc desiccation and disc space narrowing at L4-5 and L5-S1. R. 348.   Dr. William L.

Klempner noted that Plaintiff had degenerative marrow changes at both these levels.   Dr.

Klempner added that his medical history was unremarkable, his parents were alive and Plaintiff

was married with two children at the time of the injury. R. 348.   Plaintiff was noted as having

difficulty sleeping and sitting in one place for any length of time.   It was also noted that Plaintiff

was able to walk only short distances before experiencing back and leg discomfort. R. 348.

Plaintiff was diagnosed as suffering from lateral recess nerve root compression syndrome

---

[1] Plaintiff is currently on parole and has charges pending for moving from one residence to another without proper
notification under Megan's Law. R. 390.
[2] The medical evidence in administrative record contains 24 exhibits (Tr. 348-508).  Plaintiff points out that
additional medical evidence was presented to the ALJ prior to the hearing, but at the time of the hearing the record
did not contain those exhibits.  Consequently, counsel immediately resubmitted them.  According to Plaintiff, only
part of that evidence was ever placed in the record, therefore, without objection from defendant, Plaintiff has
submitted that evidence to this Court through an affidavit of counsel.  *See* Affidavit of Philip Wolf.

secondary to the bony changes. R. 348.  Plaintiff underwent surgery on July 16, 1998, to correct a right sided foraminal disc herniation at L2-3 and a left sided disc herniation at L4-5. R. 351. One month later on August 17, 1998, Dr. Klempner stated that Plaintiff's "severe pain is gone and [Plaintiff] states that he is '100% better.'" R. 354.  Dr. Klempner had another follow up visit with Plaintiff on September 14, 1998, in which he noted Plaintiff complained of twitching, weakness and numbness in his left leg. R. 356.

On September 28, 1998, Plaintiff consulted Dr. Alfred Steinberger.  Dr. Steinberger noted that Plaintiff had persistent and recurring pain that radiates throughout his lower back and left leg. R. 358.  After a postoperative MRI, an outpatient myelogram-CT-scan and post-myelography CT scan showed a mild bulging disc with no focal herniation, and a large extradural defect compressing the thecal sac bilaterally consistent with recurrent large disc herniation. R. 364.  Dr. Steinberger concluded that Plaintiff had a large recurrent disc herniation, L4-L5 bilaterally, more pronounced on the left. R. 364.  In a follow up visit on November 30, 1998, Plaintiff was observed as improving with a good range of motion and he has excellent power in both legs. R. 370.

There is a gap in the treatment records from 1998 to 2005, during which time Plaintiff was incarcerated.  Plaintiff was seen by Dr. Rajiv Sahay between February 2005 and February 2006 for depression, anxiety, sinusitis, fatigue and hemoptysis.  He was prescribed medication for depression and antibiotics for the sinus infection.

Plaintiff was admitted to Kimball Medical Center on October 22, 2006 after an intentional overdose of his girlfriend's narcotic pain medications. Pl. Br. 8.  He received treatment from Dr. Tony Juneja and was diagnosed with major depressive disorder. R. 377.  His Global Assessment of Functioning ("GAF") score was determined to be 50-59, indicating

moderate symptoms or moderate difficulty in social, occupational, or school functioning. Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 2000). He did not have other medical complaints and was not suicidal while hospitalized. R. 377. Dr. Juneja noted that Plaintiff "thought process was logical and coherent… [and] patient's mood and affect were appropriate." R. 378. It was recommended that Plaintiff continue taking Lexapro 10 mg daily. R. 378.

Plaintiff was seen for a mental health assessment at Ocean Mental Health Services on December 1, 2006. At the time, he was taking Lexipro and Trazodone. His diagnosis was depressive disorder and anxiety, as well as chronic pain due to back surgery.

Consultative psychologist Dr. Thomas Plahovinsak examined Plaintiff on January 30, 2007. Dr. Plahovinsak diagnosed moderate recurrent major depressive disorder, and added that the prognosis was favorable with treatment. R. 403. Dr. Plahovinsak further stated that Plaintiff is "capable of performing all [activities of daily living] skills independently, but has periods when he is lax about doing so." R. 402. He went on to add that Plaintiff "does not have any physical limitations that limit his ability to bend, sit, stand, or walk, despite the previously described back spasm condition. R. 402. Regarding Plaintiff's mental status, Dr. Plahovinsak recorded that Plaintiff had clear sensorium while his speech was lucid, well modulated, and goal directed. R. 402. Further, Plaintiff's thought processes were concrete, coherent, and relevant. R. 402. Plaintiff displayed "no signs of a formal thought disorder and hallucinations and delusions were denied and not suspected. R. 402.

Psychologist Dr. Amy Brams completed a State agency review of Plaintiff on March 13, 2007, and noted that he could follow simple instructions, could attend and concentrate, could

maintain adequate pace and persistence, and could relate and adapt to routine tasks in a work situation. R. 430.

Dr. Brams conducted a Mental Residual Functional Capacity ("RFC") Assessment on February 7, 2007. R. 428-30.  Dr. Brams's Functional Capacity Assessment stated that Plaintiff [has a] "depressed mood, constricted affect, [history] of rumination, [but has] adequate sleep and appetite, adequate attention, concentration and memory.  Claimant is able to follow simple instructions, attend and concentrate, keep adequate pace and persist, relate and adapt to routine tasks in a work situation." R. 430.

On February 21, 2008, Dr. Ronald Bagner issued a consultative examination report detailing that Plaintiff "ambulates with a slow but normal gait, gets on and off the examining table with moderate difficulty, dressed and undressed without assistance, and is not uncomfortable in the seated position, does not use a cane or crutches, can heel and toe with moderate difficulty." R. 433.  Shortly thereafter on February 26, 2008, Dr. Dennis Coffey conducted a consultative examination and reported that Plaintiff's overall mood was "depressed with appropriate affect." R. 439.  Dr. Coffey also noted that Plaintiff was obese, watched television, shopped for groceries, and was able to drive an automobile. R. 438-39.  Dr. Coffey diagnosed Plaintiff with major depression, mild, as well as personality disorder with narcissistic and passive-dependent features. R. 440. Completing his evaluation, he added that Plaintiff's prognosis was guarded, and that Plaintiff did not appear to have the requisite emotional fortitude to sustain himself in a work setting. R. 440.

State agency review physician Dr. Robert Walsh examined Plaintiff on March 7, 2008. R. 456-463.  Dr. Walsh determined that Plaintiff was able to lift or carry 20 pounds; frequently lift or carry 10 pounds; stand and/or walk about 6 hours in an 8-hour workday; sit with normal

breaks for a total of about 6 hours in an 8-hour workday; and push and/or pull (including operation of hand and/or foot controls) in an unlimited amount. R. 457. Dr. Walsh listed the Plaintiff's postural limitations of occasionally for climbing, balancing, stooping, kneeing, crouching, and crawling. R. 458. Dr. Walsh noted that Plaintiff has unlimited use of manipulative dexterity and no visual limitations. R. 459. In Dr. Walsh's opinion, Plaintiff was capable of performing "light" work. R. 457.

Dr. Michael D'Adamo conducted a Mental Residual Functional Capacity Assessment on March 10, 2008. R. 466. He noted that Plaintiff was "not significantly limited" in the following: understanding and memory, sustained concentration and persistence, social interaction and adaptation with a few exceptions. With respect to understanding and memory, Dr. D'Adamo determined that Plaintiff's ability to understand and remember detailed instructions was moderately limited. R. 464. He also found Plaintiff "moderately limited" in his ability to carry out detailed instructions, ability to maintain attention and concentration for extended periods, and ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. R. 464. Plaintiff was further found to be "moderately limited" in his ability to complete a normal work-day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. R. 465. Plaintiff's ability to accept instructions and respond appropriately to criticism from supervisors was also found to be moderately limited. R. 465.

In his Functional Capacity Assessment, Dr. D'Adamo's cognitive screening on Plaintiff's mental status "showed fair fund of information, accurate simple mental arithmetic… and adequate abstract thinking." R. 466. Although Plaintiff could not perform serial seven's, he could do serial three's. R. 466. Plaintiff was deemed to be capable of focusing efficiently upon

routine job tasks, relating appropriately to others, and making social adaptations.  As such, Dr. D'Adamo opined that Plaintiff "possesses the [Residual Functional Capacity ("RFC")] to adapt and be productive in routine jobs." R. 466.

A psychiatric review technique was conducted on March 14, 2008 by Dr. D'Adamo.  Dr. D'Adamo found: (1) restriction of activities of daily living to be mild; (2) difficulties in maintaining social functioning to be mild; (3) difficulties in maintaining concentration, persistence, or pace to moderate; and (4) no episodes of decompensation. R. 452.  Dr. D'Adamo also noted Plaintiff suffered from of "[p]athological dependence, passivity, or aggressivity." R. 449.  Dr. D'Adamo also noted a "disturbance of mood, accompanied by a full or manic or depressive syndrome, as evidenced by… Anhedonia or pervasive loss of interest in almost all activities, [and] decreased energy." R. 445.

Plaintiff met with his physician Dr. Ranvier Ahlawat on September 17, 2008 for a coronary artery exam.  Dr. Ahlawat performed a coronary artery CT angiography, and reached two conclusions.  First, Dr. Ahlawat found Plaintiff to have 20-30% proximal left anterior descending artery stenosis secondary to mural plaque. R. 468.  Second, Plaintiff had multiple plaques in the circumflex causing 20-30% stenosis. R. 469.  Further, the plaque was "largely fibrotic/fibrous in nature with several central calcifications." R.469.

On October 2, 2008, Dr. Akhilesh Desai performed an MRI of Plaintiff's right knee.  He noted a tear in Plaintiff's anterior cruciate ligitimate and a moderate amount of fluid present in the joint space. R. 470.  Dr. Desai had also conducted an earlier examination of Plaintiff's back on February 14, 2008. R. 500.  He concluded after a lumber MRI scan that there were no instances of recurrent disc herniation and the remainder of disc spaces did not show evidence of any disc herniation or spinal canal stenosis.  R. 500.

Dr. Susan Janes, a psychiatrist, conducted an examination of Plaintiff on February 4, 2009.  Dr. Janes diagnosed Plaintiff with depression, opined that Plaintiff could not work, and noted that the "length of [his] disability would be "more than 90 days but less than 6 months" (specifically, February 4, 2009 to August 1, 2009). R. 508.  Dr. Janes evaluated Plaintiff's orientation, memory, attention span, language, knowledge, associations, speech, sleep pattern, gait, appearance and appetite as within normal limits. R. 502.  Dr. Janes concluded that Plaintiff has a depressed mood and that he should continue his current level of care. R. 503.

Dr. Ahlawat issued an examination report dated May 20, 2009, that reflected a diagnosis of "low back pain, depression, COPD, muscle spasms," as well as depression.  Dr. Ahlawat opined Plaintiff had limitations in walking, climbing, stooping, bending, lifting and in the use of his hands, but does not specify the degree of limitation.  Wolf Affidavit at 29.  In a report dated June 1, 2009, Dr. Ahlawat stated Plaintiff could lift and/or carry 5-10 pounds for one-third of an eight-hour workday. R. 504.  Dr. Ahlawat further concluded that Plaintiff's standing and walking was affected by impairment in that Plaintiff can only walk uninterrupted for 15 minutes, or a total of 1 to 2 hours. R. 505.  Dr. Ahlawat stated that Plaintiff could sit for a total of 2-3 hours for no more than 30 minutes at a time. R. 505.  Dr. Ahlawat concluded that Plaintiff was unable to complete activities of daily living and unable to sit, lay down or sleep for more than 15 to 30 minutes. R. 506.  Prior to this examination, Plaintiff fractured his left ankle as a result of a fall on May 15, 2009. R. 502.

## III. STANDARD OF REVIEW

A reviewing court must uphold the final decision of the Commissioner if it is supported by "substantial" evidence.  42 U.S.C. § 405(g); § 1383(c)(3); *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).  For evidence to be deemed "substantial," it must be more than a

"mere scintilla," *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 220, 59 S.Ct. 206, 83 L.Ed. 126 (1938), but may be slightly less than a preponderance. *Stunkard v. Sec'y of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988). Notably, the inquiry is not whether the Commissioner's conclusion was reasonable given the record before him. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).

The reviewing court must review the evidence in its entirety. *See Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984). As part of this review, the court "must 'take into account whatever in the record fairly detracts from its weight.'" *Schonewolf v. Callahan*, 972 F.Supp. 277, 284 (D.N.J. 1997) (quoting *Willibanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988) (internal citation omitted)). The Commissioner has a corresponding obligation to facilitate the court's review: when the record shows conflicting evidence, the Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." *Ogden v. Bowen*, 677 F.Supp. 273, 278 (M.D.Pa. 1987) (citing *Brewster v. Heckler*, 786 F.2d 581 (3d Cir. 1986)). Indeed, access to the Commissioner's reasoning is essential to meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'

*Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978) (quoting *Arnold v. Sec'y of Health, Educ. & Welfare*, 567 F.2d 258, 259 (4th Cir. 1977)). Nevertheless, the reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams*, 970 F.2d at 1182 (citing *Early v. Heckler*, 743 F.2d 1002, 1007 (3d Cir. 1984)).

### A. Establishing Disability

In order to be eligible for DIB and SSI benefits,[3] a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  A person is disabled for these purposes only if his physical and mental impairments are "of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §423(d)(2)(A).

Social Security regulations set forth a five-step, sequential evaluation procedure to determine whether an individual is disabled.  See 20 C.F.R. § 404.1520.  For the first two steps, the claimant must establish (1) that he has not engaged in any "substantial gainful activity" since the onset of his alleged disability, and (2) that he suffers from a "severe impairment" or "combination of impairments." 20 C.F.R. § 404.1520(a)-(c).  The claimant bears the burden of establishing these first two requirements, and failure to satisfy either automatically results in a denial of benefits. *Bowen v. Yuckert*, 482 U.S. 137, 146-47 n. 5, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

If the claimant satisfies his initial burdens, the third step requires that he provide evidence that his impairment is equal to or exceeds one of those impairments listed in Appendix 1 of the regulations ("Listing of Impairments"). 20 C.F.R. § 404.1520(d).  Upon such a showing, he is presumed to be disabled and is automatically entitled to disability benefits. *Id.* If he cannot so demonstrate, the benefit eligibility analysis proceeds to steps four and five.

---

[3] The standards for obtaining DIB, 42 U.S.C. § 401 *et. seq.*, and SSI, 42 U.S.C. § 1381 *et. seq.*, are the same in all relevant aspects. *See Sullivan v. Zebley*, 493 U.S. 521, 526 n. 3, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990).

The fourth step of the analysis focuses on whether the claimant's "residual functional capacity" sufficiently permits him to resume his previous employment. 20 C.F.R. § 404.1520(e). "Residual functional capacity" is defined as "that which an individual is still able to do despite the limitations caused by his or her impairments." *Id*. If the claimant is found to be capable of returning to his previous line of work, then he is not "disabled" and is therefore not entitled to disability benefits. *Id*. If, on the other hand, the claimant is unable to return to his previous work, the analysis proceeds to step five.

At step five, the burden shifts to the Commissioner to demonstrate that the claimant can perform other substantial gainful work. 20 C.F.R. § 404.1520(f). If the Commissioner cannot satisfy this burden, the claimant will receive Social Security benefits. *Yuckert*, 482 U.S. at 146-47 n. 5.

## B. Objective Medical Evidence

Under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401 *et seq*. and 42 U.S.C. § 1381 *et seq*., a claimant is required to provide objective medical evidence in order to prove his disability. 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."); 42 U.S.C. §1382c(a)(3)(H)(i) ("In making determinations with respect to disability under this subchapter, the provisions of [42 U.S.C.] § 423(d)(5)(A) of this title shall apply in the same manner as they apply to determinations of disability under subchapter II of this chapter.").

Accordingly, a plaintiff cannot prove that he is disabled based solely on his subjective complaints of pain and other symptoms. *See Green v. Schweiker*, 749 F.2d 1066, 1069-70 (3d Cir. 1984) ("[S]ubjective complaints of pain, without more, do not provide medical findings that

11

show that he has a medically determinable impairment.  *See id.; see also* 42 U.S.C. § 423(d)(1)(A) (defining "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment …"); 42 U.S.C. § 1382c(a)(3)(A) (same).

Furthermore, a claimant's symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect ... [his] ability to do basic work activities unless "medical signs" or laboratory findings show that a medically determinable impairment is present." 20 C.F.R. § 404.1529(b); see *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) (rejecting claimant's argument that the ALJ failed to consider his subjective symptoms when the ALJ made findings that his subjective symptoms were inconsistent with objective medical evidence and the claimant's hearing testimony); *Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992) (denying claimant benefits where claimant failed to proffer medical findings or signs that he was unable to work).

## III. THE ALJ'S DECISION

In his decision issued after the hearing held on June 5, 2009 (R. 9-16), the ALJ followed the requisite sequential evaluation and considered the evidence before him.  The decision included evaluation of Plaintiff's subjective complaints as well as the medical reports related to Plaintiff's various conditions.  After considering the evidence in the record, the ALJ made the initial determination that Plaintiff last met the insured status requirements of the Social Security Act on March 31, 2007. R11.  He then proceeded to the required five-step sequential analysis discussed above.

At step one of the sequential evaluation, the ALJ determined that Plaintiff had not engaged in any substantial gainful activity since the October 2006 alleged onset date. R. 11.  At

step two, he concluded that Plaintiff had the following severe impairments: lumbar degeneration, degeneration of the right knee, a history of ankle fracture and depression. R. 11.  Although the ALJ found Plaintiff's impairments to be severe, the ALJ found at step three that the evidence did not show an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R 11-12. He considered the claimant's mental impairments singularly and in combination in finding that the claimant's mental impairments do not meet or equal the criteria of listings 12.04 and 12.09. R. 12.  In order to meet the relevant listings, the claimant's mental impairments must result in at least two restrictions or difficulties listed in "paragraph B." 20 C.F.R. Part. 404, Subpart. P, App. 1.  The "paragraph B" criteria is comprised of: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. R. 12. The ALJ found that the claimant (1) had a mild restriction in activities of daily living; (2) had mild difficulties in social functioning; (3) had mild difficulties regarding concentration, persistence or pace; and (4) had experienced one to two episodes of decompensation, each of extended duration. R. 12. Thus, the ALJ determined that the Plaintiff had not shown at least two marked limitations of more than moderate but less than extreme. R. 12.  The ALJ also noted that the Plaintiff was not able to meet "paragraph C" criteria because he has been able to live independently.[4] R. 12.

At step four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b) and

---

[4]  "Paragraph C" is "an assessment of the degree of functional limitation the additional impairment(s) imposes to determine if it significantly limits your physical or mental ability to do basic work activities, i.e., is a 'severe' impairment(s), as defined in §§ 404.1520(c) and 416.920(c)." 20 C.F.R. Part. 404, Subpart. P, App. 1, 12.00 Mental Disorders.

416.967(b). R. 12.  In reaching his conclusion, the ALJ specified that he considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. § 404.1529 and 416.929 and SSRs 9604p and 96-7p. R. 13.  The ALJ also stated that he considered opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527 and 20 C.F.R. § 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

In reaching his conclusion at step four, the ALJ noted that in 2007 Plaintiff told the consultative examiner that he could perform all activities of daily living satisfactorily.  That examiner concluded that the Plaintiff did not have any physical limitations that limited his ability to bend, sit, stand, or walk.  The ALJ further noted that Plaintiff was diagnosed with major depressive disorder, but with a good prognosis.  The ALJ also relied upon the findings of the later consultative examinations, which were generally satisfactory.  Similarly, the ALJ took note that in November 2008, notes from Ocean Mental Health stated that Plaintiff's "mood has improved" and he was "sleeping well." R. 14.  The ALJ gave less weight to the conclusions of Dr. Ahlawatt, noting that he "failed to disclose any support for his conclusions." R. 15.

Additionally, while the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, the ALJ concluded that Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not credible.  R. 14.  Plaintiff testified that he loses his balance and becomes tired if he walks, and reported back spasms, knee pain and ankle pain.  However, the ALJ pointed out that Plaintiff stated that he is able to accompany his girlfriend shopping, drive and perform light cleaning.  Turning to the medical evidence, the ALJ noted that Dr. Tony Juneja evaluated Plaintiff's thought processes as logical and coherent with a mood and affect that were appropriate. R. 13,

14

Exhibit 4F.  Dr. Brubaker described Plaintiff's cognitive functioning, language, knowledge, associations, speech, judgment and insight as all intact. R. 13, Exhibit 5F.  Plaintiff told Dr. Plahovinsak that he could perform all activities of daily living satisfactorily.  Dr. James reported Plaintiff's motivational level as improved. R. 14, Exhibit 18F.  He stated that even after Plaintiff fractured his left ankle, his orientation, memory, attention, language, knowledge, associations, speech, sleep pattern, gait/station, appearance and appetite were all normal. R. 14, Exhibit 22F.

Based upon his RFC assessment, the ALJ found Plaintiff capable of performing past relevant work as a sewing machine operator and driver.  The ALJ concluded that although other problems have worsened for Plaintiff since he fractured his ankle in 2009, but there had been no showing made that all work was ruled out for any period of 12 continuous months. R. 15.  The ALJ added that Plaintiff may re-file for benefits if his condition remains as a bar to the above-cited jobs, or at the sedentary level for 12 continuous months following the fracture.

Plaintiff now challenges the ALJ's decision on a number of grounds.  First, Plaintiff argues the ALJ improperly relied upon the opinion of a psychologist, Dr. Plahovinsak, in forming an opinion about Plaintiff's physical limitations.  Second, Plaintiff alleges that the ALJ failed to properly evaluate Plaintiff's subjective testimony regarding his pain and limitations.  Third, Plaintiff claims that the ALJ failed to take into account Plaintiff's alleged obesity.  Fourth, Plaintiff argues that the ALJ failed to consider all of the Plaintiff's impairments in his RFC evaluation.  Finally, Plaintiff claims the ALJ erred in his RFC determination by failing to give weight to the opinions of treating physicians.

## IV. ANALYSIS

### A.  The ALJ Properly Considered the Report of Dr. Plahovinsak

Plaintiff first argues that the ALJ erred in relying, in part, on consultative psychologist Dr. Plahovinsak's report in reaching conclusions regarding Plaintiff's physical limitations.  The ALJ noted that Plaintiff told Dr. Plahovinsak that he can perform all activities of daily living. R. 14.  Further, Dr. Plahovinsak stated that the claimant "does not have any physical limitations that limit his ability to bend, sit, stand or walk." R 14, 402.  In response to Plaintiff's argument, the Commissioner argues that Dr. Plahovinsak merely reported the Plaintiffs own statements in that he was "capable of performing all activities of daily living skills independently and did not have physical limitation." Defendant's Brief ("Def. Br.") 10.  The Court finds that the ALJ did not err in relying, in part, on these statements Dr. Plahovinsak's report.

In conducting a mental status exam, it is apparent that a psychologist makes determinations regarding a patient's mental health coupled with observations of the patient's physical appearance and physical characteristics as a part of his or her overall findings. *See Stalnaker v. Astrue*, 2011 WL 2269413 at *8 (N.D.W.Va. 2011) ("On Mental Status Exam Plaintiff was alert, oriented, and cooperative. She was neatly and cleanly dressed. She had no obvious physical limitations."); *Klipfel v. Astrue*, 2011 WL 4014365 at *9 (E.D.Mo. 2011) ("During the mental status exam, Plaintiff was cooperative and did not appear to be in a great deal of physical distress despite a delay in motor behavior"); *Thomas v. Astrue*, 2009 WL 3247139 (S.D.W.Va. 2009) ("On mental status exam, Mr. Richmond and Mr. Brezinski noted no disfiguration or physical limitations to movement.").  Thus, the Court finds it is not improper for the ALJ to rely upon such observations.  Additionally, as pointed out by Defendant, Dr.

Plahovinsak appeared to be reporting not only his own observations but Plaintiff's own statements with respect to his activities of daily living.

Moreover Dr. Plahovinsak's comments are consistent with other record evidence. For example, state agency review physician Dr. Walsh reported that Plaintiff could lift and/or carry ten pounds frequently and twenty pounds occasionally. R. 457-61. Consultative Examiner Dr. Bagner also noted that Plaintiff "ambulates with a slow but normal gait, gets on and off the examining table with moderate difficulty, dressed and undressed without assistance, and is not uncomfortable in the seated position, does not use a cane or crutches, can heel and toe with moderate difficulty." R. 433.

### B. The ALJ Properly Evaluated Plaintiff's Subjective Testimony

Plaintiff asserts that the ALJ did not properly evaluate Plaintiff's subjective testimony regarding pain. Plaintiff specifically argues that the erred in finding Plaintiff's statements regarding his symptoms as not credible because "they are inconsistent with the … residual functional capacity assessment." Tr. 14. Despite the boilerplate language used by the ALJ, which at least one circuit court has criticized, the Court finds that the ALJ properly considered Plaintiff's complaints in light of the evidence of record.[5]

A plaintiff cannot prove that he is disabled based solely on his subjective complaints of pain and other symptoms. *See Green v. Schweiker*, 749 F.2d 1066, 1069-70 (3d Cir. 1984)

---

[5] As stated by the Seventh Circuit:

> We criticized this boilerplate in *Bjornson v. Astrue*, 671 F.3d 640, 644–46 (7th Cir. 2012) … Obvious problems include the fact that the ALJ's finding of residual functional capacity is not "above" in the opinion but is yet to come, and the fact that this statement puts the cart before the horse, in the sense that the determination of capacity must be based on the evidence, including the claimant's testimony, rather than forcing the testimony into a foregone conclusion. In *Bjornson*, this flaw required us to reverse and remand, but that is not always necessary. If the ALJ has otherwise explained his conclusion adequately, the inclusion of this language can be harmless.

*Filus v. Astrue*, 2012 WL 3990651, 4 (7th Cir. 2012)

("[S]ubjective complaints of pain, without more, do not in themselves constitute disability."). However, where pain or other symptoms are alleged, the ALJ must evaluate the plaintiff's complaints in conjunction with the objective medical and other evidence of record.  *Schaudeck v. Commissioner of Social Sec. Admin.*, 181 F.3d 429, 433 (3d Cir. 1999).  Similarly, although the ALJ has discretion "to evaluate the credibility of a claimant and to arrive at an independent judgment in light of medical findings and other evidence regarding the true extent of the pain alleged by the claimant," *Brown v. Schweiker*, 562 F.Supp. 284, 287 (E.D. Pa. 1983), if the ALJ concludes that testimony is not credible, he must indicate the basis for that conclusion in his decision.  *Cotter v. Harris*, 642 F.2d 700, 705-706 (3d Cir. 1981).

Here, in reaching his decision, the ALJ expressly "considered all symptoms and the extent to which [they] can reasonably be accepted as consistent with the objective medical evidence and other evidence." R. 13.  The Commissioner correctly points out that the ALJ "did not find that Plaintiff was 'not credible because… his testimony [was] inconsistent with [the ALJ's] assessment of his RFC' but rather the ALJ properly considered Plaintiff's complaints in light of other evidence of record. Def. Br. 14 citing R. 13-15.  The ALJ noted that at the June 5, 2009 hearing that Plaintiff complained that his symptoms had worsened only over the previous six months. R.13.  The ALJ also found that although Plaintiff initially said he was unable to work primarily because of emotional difficulty and problems in concentrating, his examination findings were largely "unremarkable."  R.13-15, 167.  When Plaintiff was released from the hospital in November 2006, Dr. Juneja noted that Plaintiff was alert and oriented, with normal speech, intact memory, logical and coherent thought processes, and appropriate affect, mood, concentration, impulse control, and behavior.  R. 377-78.  In February 2008, Dr. Bagner noted that Plaintiff walking with a slow but normal gait, sat comfortably during the interview, and had

normal range of motion in all joints, with no motor or sensory abnormality and negative straight leg raise testing. R. 432, 435-36.  On March 7, 2008, State agency review physician Dr. Walsh expressly noted that the severity of Plaintiff's symptoms as "not proportionate to the mer ["medical evidence on record"]." R.461.

Overall, the ALJ relied on specific examples in the record that supported the conclusion that, although Plaintiff's impairments could be expected to cause the symptoms he alleged, Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." R. 14.  Accordingly, the Court finds that the ALJ's conclusion concerning Plaintiff's credibility and subjective complaints to be supported by substantial evidence.

### C.  There Is No Evidence Of Obesity-Related Limitations

Next, Plaintiff asserts that the ALJ gave no consideration to the claimant's obesity in formulating the RFC. Pl. Br. 32.  At the hearing, Plaintiff was 5'7'' and weighed 195lbs.  His weight fluctuated to some degree over time.  For example, he weighed 173lbs at his visit to Kimball Medical Center in 2006. R. 381.  The Commissioner argues that Plaintiff did not identify any work-related limitation due to obesity that would prevent him from performing a full range of light work. Def. Br. 12.  The Court agrees with the Commissioner that there is no evidence of obesity-related limitations.

"An ALJ [does] not err where a plaintiff provided 'no objective medical evidence indicating that his weight problem caused or contributed to any severe impairments' and where 'the record contain[ed] no mentions of a physician diagnosing or treating [the plaintiff] for obesity' even though some doctors described him as obese)." *Sassone v. Comm'r of Soc. Sec.*,

165 Fed. App'x 954, 958 (3d Cir. 2006).  In *Rutherford v. Barnhart*, the Third Circuit held that

where the plaintiff:

> "has not specified how [obesity] would affect the five-step analysis undertaken by
> the ALJ… [t]hat generalized response is not enough to require a remand,
> particularly when the administrative record indicates clearly that the ALJ relied
> on the voluminous medical evidence as a basis for his findings regarding her
> limitations and impairments. Because her doctors must also be viewed as aware of
> Rutherford's obvious obesity, we find that the ALJ's adoption of their conclusions
> constitutes a satisfactory if indirect consideration of that condition."

> *Rutherford*, 399 F.3d 546, 553 (3d Cir. 2005).

Plaintiff's obesity was acknowledged throughout Plaintiff's treatment records, but was

never identified as being or contributing to a limitation, and never was the focus of any clinical

attention.  Consultative examiner Dr. Bagner noted that Plaintiff's height was 67 inches and

Plaintiff's weight was 207 pounds on February 21, 2008. R. 432.  State agency review physician

Dr. Walsh saw Plaintiff on March 7, 2009, and listed Plaintiff's height and weight as the same as

Dr. Bagner had recorded (67 inches, 207 pounds) a year prior. R. 457.  Thus, the Court

concludes ALJ properly evaluated the reports of examining and treating physicians who were

aware of Plaintiff's weight and failed to attribute any specific limitations to obesity.

### D.  Substantial Evidence Supports The ALJ's RFC Finding

Plaintiff contends that the ALJ ignored the walking requirements of a light exertional

limitation.  The full range of light work involves:

> "lifting no more than 20 pounds at a time with frequent lifting or carrying of
> objects weighing up to 10 pounds. Even though the weight lifted may be very
> little, a job is in this category when it requires a good deal of walking or standing,
> or when it involves sitting most of the time with some pushing and pulling of arm
> or leg controls. To be considered capable of performing a full or wide range of
> light work, you must have the ability to do substantially all of these activities. If
> someone can do light work, we determine that he or she can also do sedentary
> work, unless there are additional limiting factors such as loss of fine dexterity or
> inability to sit for long periods of time."

20 C.F.R. § 404.1567.  Specifically, Plaintiff argues that, in reaching his conclusion, the ALJ did not satisfactorily address Plaintiff's use of a cane. Pl. Br. 34.  However, for nearly all of the time period at issue, Plaintiff did not use a cane.  Further, as Defendant points out, Plaintiff's gait was "steady" when he saw Dr. Plahovinsak in January 2007, "slow but normal" when evaluated by Dr. Bagner in February 2008, and unremarkable when assessed by Dr. Coffey during that same month.  His gait was within normal limits each time he was seen by Dr. James from March 2007 through November 2008.

Plaintiff fractured his ankle at the end of April 2009, and began using a cane approximately "one month" prior to the hearing before the ALJ.  Thus, as the Commissioner correctly points out, the cane usage occurred well after Plaintiff's March 2007 date of last insured and therefore could have no bearing on his disability eligibility.  Def. Br. 13, citing 20 C.F.R. §§ 404.130, 404.315(a).  Further, the cane was only used for less than twelve continuous months, and the cane was not shown by any documentation to be medically required.  42 U.S.C. § 1382(a)(3)(A); see 20 C.F.R. §§ 404.1509, 416.909 (describing duration requirement), SSR 96-9p (a hand held device will be found to be "medically required" where there is "medical documentation establishing the need").

Plaintiff also argues that the ALJ failed to give consideration to the report of state agency psychologist Dr. Brams to the extent Dr. Brams "found that claimant had moderate limitations in several areas involving sustained concentration and persistence and social interaction and adaption." Pl. Brf. at 37.  In support of his argument, Plaintiff refers to Section I of the Mental Residual Functional Capacity Assessment completed by Dr. Brams. Pl. Br. 37.  The Commissioner points out, however, that that Section I of the Mental RFC is only a worksheet

and does not constitute the RFC assessment and thus is entitled to no weight.  *Smith v. Commissioner*, 631 F.3d 632 (3d. Cir. 2010).

In her "Functional Capacity Assessment," Dr. Brams listed medications to help with sleep and depression, as well as stating Plaintiff has "a depressed mood, constricted affect, history of rumination, adequate sleep and appetite, adequate attention, concentration and memory." R. 430.  Dr. Brams also concluded that Plaintiff "is able to follow simple instructions, attend and concentrate, keep adequate pace and persist, [and] relate and adapt to routine tasks in a work situation." R. 430.  The ALJ's RFC finding is fully consistent with these conclusions.

Plaintiff also argues that the ALJ did not properly consider Dr. Coffey's that "Plaintiff does not appear to have the requisite emotional fortitude to sustain himself in a work setting." Pl. R. Br. 7; R.440.  The Commissioner notes that Dr. D'Adamo, a State agency review psychologist, considered Dr. Coffey's report in March 2008 and concluded that Plaintiff remained capable of work. Def. Br. 12.  Dr. D'Adamo's report stated that Plaintiff "could adapt and be productive in routine jobs," could handle three step directions, focus efficiently on routine tasks, and relate appropriately to others. R. 466.  Such was entirely consistent with the ALJ's determination.

Finally, the Court finds the ALJ properly considered the the February 2009 report of Dr. Janes in which Dr. Janes stated Plaintiff was unable to work due to depressive disorder.  The ALJ did not dispute the diagnosis of depression, which was found elsewhere in the record, and Dr. Janes opinion that Plaintiff was disabled was not entitled to special consideration.  *See Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991) (ALJ need not defer to conclusory medical source opinions).

In sum, the Court finds that the ALJ appropriately evaluated all of the Plaintiff's impairments in determining that the Plaintiff is capable of light work, and the ALJ's conclusion is supported by the substantial evidence.

**E.  Additional Evidence Does Not Warrant Remand**

Plaintiff contends that the ALJ failed to consider the additional records counsel submitted as to Dr. Ahlawat.  *See supra* note 2.  The Commissioner argues, however, that the "additional records are largely duplicative" since the prior reports from both doctors contain more detailed information. Def. Br. 15.  The Court agrees that the additional records are largely cumulative of opinions and reports already considered by the ALJ.

Although Dr. Ahlawat's report is dated May 20, 2009 is not incorporated into the record, the record already contained a more detailed functional assessment by Dr. Ahlawat dated June 1, 2009, which the ALJ considered and rejected as being unsupported.  The May 20th report does not describe any further restrictions, additional tests or findings to support the later assessed limitations.  The Court finds that a remand for consideration of the additional evidence is unwarranted.

**V.  CONCLUSION**

For the foregoing reasons, the Court concludes that the ALJ's findings are supported by substantial evidence, and, therefore, affirms the Commissioner's final decision denying benefits for Plaintiff.  An appropriate Order accompanies this Opinion.

/s/ Joel A. Pisano
JOEL A. PISANO, U.S.D.J.

Date: September 28, 2012